## GERALD v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. March 2, 1908.)

No. 1,472.

ALIENS—EXCLUSION—CHINESE—OFFENSES—EVIDENCE.

In a prosecution for attempting to land certain Chinese laborers not entitled to enter the United States, evidence *held* to show a landing, an attempt to land, or the permitting of the landing of the Chinese by the defendant, and to sustain a conviction.

[Ed. Note.—Citizenship of the Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.]

In Error to the District Court of the United States for the Southern Division of the Southern District of California.

Wm. J. Variel and J. Vincent Hannan, for plaintiff in error.
Oscar Lawler, U. S. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. Plaintiff in error was defendant in the court below to an indictment charging him with having at a certain stated time and place willfully, unlawfully, and knowingly brought within the United States on a certain named vessel, from the Republic of Mexico, certain named Chinese laborers, and did then and there land, attempt to land, and permit them to be landed within the United States, contrary to the provisions of the Chinese exclusion acts. The record shows, among other things, this stipulation:

"It is stipulated, by and between the parties hereto, that the evidence offered by the government showed that the defendant Gerald knowingly, and

with intent to violate the Chinese exclusion laws, took the eight Chinese. mentioned in the indictment as having been brought into the United States by defendant on his boat Neptune, aboard his boat Neptune at a point in Lower California, Mexico, about eight or nine miles north of Ensenada, under previous arrangements made between said defendant Gerald and a Chinaman in Ensenada and certain parties in Los Angeles, through Fredrico Goldbaum, a witness for the government; that defendant took said eight Chinamen aboard his boat Neptune for the purpose and with the intent of landing them in the United States at a point on the coast of Orange county, California, and that defendant was to receive therefor the sum of eight hundred (800) dollars; that defendant knew the said Chinese persons were not lawfully entitled to enter or be in the United States."

The record shows, further, that the only point presented by the plaintiff in error is "the sufficiency of the evidence to show a landing, attempt to land, or the permitting of the landing, of these Chinese by the defendant." Since it was a conceded fact that the defendant, knowing that the Chinamen in question were not entitled to enter or be in the United States, took them aboard his boat Neptune at a point in Lower California, Mexico, for the purpose and with the intent of landing them in the United States under a previous contract entered into by him to violate its laws for a money consideration, the sole point of the plaintiff in error is fully answered by the following testimony of the witness John M. Ballou, who testified:

"That he was, on March 1, 1906, a Chinese inspector in the Immigration Department of the United States, located at San Diego. That on and previous to March 1, 1906, he had been on the watch for defendant Gerald and his boat Neptune, anticipating that defendant would bring in some Chinamen from Mexico. That on March 1st, early in the afternoon, he had hired a small launch with a man by the name of Francisco Mattos to run it, to take him around the Bay of San Diego to look for the Neptune. That he ran around the wharves in the launch, and was just coming home when he saw the two boats—Mike List's boat, the Skipjack, and the Neptune—coming down the bay in the ship's channel, about one-half to three-quarters of a mile from the quarantine station. The Neptune's sails were up, but were torn. There were three straight rents pretty near the length of the sail, but the sail could hold a good deal of wind. We were just off the end of the wharf, near the mooring place of the Neptune and Skipjack, and waiting for them to come up. When they had reached the mooring place of the Skipjack, we ran our launch alongside of the Neptune, and I went aboard the Neptune. The defendant and the woman were the only persons visible on deck. The woman was at the hatch, bailing out water from the hold with some kind of a cooking utensil. Gerald had hold of the rudder. I walked over to the hatch and spoke to the woman. She would not let me go down into the hold. I looked toward the defendant, and he told the woman to get out of the hatchway and let me go down. I then went down through the hatch into the hold. There were no Chinamen visible when I first went into the hold, and I concluded that there were no Chinamen on board, and had started to come out, when I noticed the bare ankle of a Chinaman projecting from under some wet rags and sacks. I then discovered that the eight Chinamen were lying, or crouched, on a bench or platform which ran around the side of the boat, about two feet from the floor or bottom of the hold. The floor was covered with water, which reached up to about where the Chinamen were lying. They were wet. I then came out of the hold onto the deck. Up to this time no one had spoken to me. I came up then, and asked Mr. Gerald if he was captain of the boat, and he said, 'Yes;' and I said, 'What is your name?' and he said, 'William Gerald.' I said, 'Tell the Chinamen to get out and dress and get into this boat of mine,' and he did, and I said, 'You seem to have some trouble here.' 'Yes,' he said, 'I got on top of Coronado Island, and I found these Chinamen. I do not know who left them there. I started to

bring them in. and give them over to the proper officer,' and he said, 'Are you the proper officer?' And I said, 'I am a Chinese inspector,' and I got them all in the little boat, eight of them. Gerald got in, and I got List and his partner, and we went over to the Star Boathouse. When I got to the Star Boathouse, I notified them that I put them all under arrest. I telephoned for a policeman and deputy marshal and put them in jail. From the first time I saw the Neptune until the time I went into the hold, I did not see any Chinamen. Nobody told me there were any Chinamen aboard until I went down into the hatch. I was very much surprised to find them. It is pretty hard to say how much water was in the hold. It was up to the seat of a sort of a platform in the hold where they were lying around. .I guess some of them had got water on them. The defendant did not tell me before I went into the hold that he had eight Chinamen there. Francisco Mattos was with me in charge of the launch on which I was during the whole time. The Neptune is about 23 or 24 feet long, and the hold was not more than 4½ feet deep."

The judgment is affirmed.